**COHN, Appellee, v. KRAUSS et, Appellants.**

Ohio Appeals, First District, Hamilton County.

No. 6239.   Decided June 1, 1943.

Burns & Friedman, Cincinnati, for appellee.

Joseph L. Meyer, Cincinnati, and Benjamin S. Schwartz, Cincinnati, for appellants.

## OPINION

By MATTHEWS, J.

On the motions of the parties to set aside the verdicts and for judgment notwithstanding the verdicts, the trial court

150

set aside the verdict in favor of the defendants on the cause of action alleged in the petition and on the third, fourth, and fifth causes of action alleged in their third amended answer and cross-petition and cross-petition, and overruled the defendants' motion to set aside the verdict on their first and second causes of action alleged in their third amended answer and cross-petition. The trial court thereupon sustained the plaintiff's motion for judgment in his favor on all the causes of action for $12,012.33 and costs, notwithstanding the verdicts. It is from that judgment that this appeal was taken.

(1) The plaintiff sued upon a negotiable promissory note dated March 28th, 1932, for $8,000.00 payable two years after date, with interest at 6%, interest payable every three months to his order, and signed as makers by the defendants.

In their third amended answer the defendants entered a general denial and affirmatively alleged that the plaintiff was not the real party in interest, that there was no consideration and that the note was obtained by fraud and misrepresentation.

From admissions at the trial it appeared that the defendants did not deny the execution of the note, but testified that they thought they were signing a note payable to Sara Cohn, the plaintiff's wife, and that the plaintiff had misled them into so thinking. At that time the title to a leasehold estate stood in the names of Sara Cohn and Dora Krauss as co-owners. Sara Cohn was the plaintiff's wife and Dora Krauss was the wife of her co-defendant. Sara Cohn and Dora Krauss had sublet the premises to Atlas-Krauss, Inc., the assets or capital stock of which the defendant, M. Krauss desired to acquire from a company which the plaintiff controlled. He needed $8,000.00 with which to make the initial payment and the plaintiff or his wife was willing to loan it to him. During the negotiations undoubtedly at one time the parties contemplated that the transaction should take the form of a loan from Sara Cohn to Dora Krauss and in this connection documents were prepared and, perhaps, signed whereby Dora Krauss agreed to convey her one-half interest in this leasehold estate to Sara Cohn "To secure the payment of Eight Thousand ($8,000.00) Dollars." This document contained a provision that upon the failure to pay the note on or before its maturity Dora Krauss should forfeit her interest in the leasehold and the debt should be extinguished. There is evidence that the conveyance of the one-half interest was made by Dora Krauss to Sara Cohn in accordance with the provision of the agreement. This conveyance, if made, was never recorded, and, later Dora Krauss joined with Sara Cohn in surrendering the leasehold to the owner of the fee.

There is a mass of immaterial details in the evidence. We have picked out that upon which the defendants have placed the most emphasis, and it is clear that their obligation on the note remains intact.

Whether the payee should be Sara Cohn or Nathan Cohn was immaterial. The obligation remained the same. If it had been Sara Cohn she could have immediately transferred it to Nathan Cohn. All the negotiations were directed by the husbands. There was no personal equation involved so far as the identity of the payee was concerned and the right of the makers was not changed one iota.

It is also clear that the agreement to convey the one-half interest in the leasehold, and its conveyance, if made, was as security for this note and, therefore, the provision with reference to the effect of a default would be construed as an attempt to impose a forfeiture. In 27 **O. Jur.**, at 278, et seq. it is said:

"Where there is a deed absolute in form and a separate agreement to reconvey upon payment of a certain sum, and there is at the time an obligation to pay such sum, the instrument is a mortgage, in equity, but at law it is a deed, conveying legal title upon its delivery. Where, between the vendor and vendee, the relation of debtor and creditor exists at the time a conveyance, absolute in form as a deed, is made of real estate, and the parties, as part of the transaction, agree that the vendee shall reconvey the real estate to the vendor on the repayment of a stipulated sum of money in a stated time, and the circumstances attending the transaction and general course of dealing between them furnish strong presumptive evidence that the deed was intended as a mortgage security, a court of equity will hold such a deed to be a mortgage. It is well known that courts of equity lean against construing contracts in the nature of securities for debts to be conditional sales, and therefore, unless the transfer be clearly made out to be of that nature, it is always construed to be a mortgage."

While the dates of some of these instruments, letters and statements are subsequent to the date the note bears it is clear that the note was the last and final integration of their contract. It therefore superseded all such prior and contemporaneous negotiations on the subject. The defendants admittedly received the money and the note was the memorial of that obligation, which they signed for the pur-

pose of making it such. The note could not be varied, added to, or subtracted from by evidence of prior or contemporaneous oral or written negotiations.

We are therefore of the opinion that the trial court did not err in finding that the plaintiff was the real party in interest and entitled to judgment on his cause of action on the note, notwithstanding the verdict. We proceed to consider the ruling of the court granting the plaintiff's motion for judgment on the third, fourth, and fifth causes of action set forth in the third amended answer and cross-petition.

(2) The trial court found that all five causes of action alleged in the third amended cross-petition were barred by the statute of limitations and based its ruling granting judgment for the plaintiff solely on that ground. The first cause of action was based on an alleged promise to indemnify the defendant Morris Krauss for money paid on March 24th, 1930 in satisfaction of a judgment of the Common Pleas Court of Hamilton County, Ohio, in favor of one Schneider. The money was paid in Ohio by the defendant, a citizen of Ohio.

The second cause of action was on an alleged promise to indemnify the defendant Morris Krauss against loss on account of money loaned to one Closterman. This cause of action arose on July 11th, 1928, when the defendant paid the amount to the creditor in Ohio.

The third cause of action was on another promise of indemnity against loss on a claim asserted by one Yaegerman against the defendant Morris Krauss which defendant was required to and did pay on March 24th, 1930.

The fourth cause of action was on a similar promise of indemnity against loss upon a claim asserted by one Hirsch which the defendant Morris Krauss was required to and did pay on July 22nd, 1931.

The fifth cause of action arose out of a transaction relating to an investment in a corporation known as Big Three Radio Corp. The defendant, Morris Krauss, alleged that in June, 1924, he and the plaintiff each agreed to invest $5,000.-00 in that corporation, for which each would acquire a one-third interest in said corporation, and that he gave to the plaintiff $5,000.00 for that purpose, but the plaintiff only invested $3750.00, and that in 1926 upon a dissolution or liquidation of the corporation the plaintiff obtained certain assets for him for which he never accounted and that he did not discover any of these facts until 1937.

None of these causes of action was based upon a written promise in writing.

During all this time the plaintiff resided in Chicago, Illinois, and all the alleged agreements were made in Chicago, Illinois.

This action was filed on January 4th, 1937. The cross-petition was filed on December 9th, 1937.

After this action was filed Morris Krauss executed and delivered to Dora Krauss a written document as follows: "I hereby assign to Dora Krauss one-half of all my claims against Nathan Cohn." This writing bears the date of October 18th, 1937.

It is seen that the first, second, and third causes of action accrued more than six years before the institution of this action, that the fourth accrued a little less than six years, and that the fifth accrued more than ten years theretofore.

It is also seen that the plaintiff's cause of action accrued on March 28th, 1934, and from that time forward the causes of action of the respective parties have had a co-existence.

On these facts, counsel have devoted much effort to a discussion of the applicable period of limitation. The defendants contend that the Ohio law controls, while the plaintiff contends that the law of Illinois applies and introduced in evidence a statute of that state fixing five years as the limitation for bringing actions upon contracts, express or implied.

Even though not offered in evidence, Ohio Courts are required to take judicial notice of the statute laws of the other states of the United States. Sec. 12,102-31 GC.

Much of the discussion revolves around the meaning of §§11,228 and 11,234 GC. These sections provide:

"Sec. 11,228. When a cause of action accrues against a person, if he is out of the state, or has absconded, or conceals himself, the period of limitation for the commencement of the action as provided in this chapter, shall not begin to run until he comes into the state or while he is so absconded or concealed. After the cause of action accrues if he departs from the state, or absconds or conceals himself, the time of his absence or concealment shall not be computed as any part of a period within which the action must be brought."

"Sec. 11,234. If the laws of any state or country where the cause of action arose limits the time for the commencement of the action to a less number of years than do the statutes of this state in like causes of action then said cause of action shall be barred in this state at the expiration of said lesser number of years."

On the one hand it is contended that by §11,228 GC, the time of the absence of the debtor must be deducted in computing the time in all cases. On the other hand it is contended that by §11,234 GC, in every case where by the laws of the state in which the cause of action arose it is barred in a less number of years than the Ohio period, it is also barred in this state at the expiration of the lesser number of years.

We believe this latter construction to be correct. Its application here depends on where these causes of action arose and that fact is in dispute, but we believe that the true rule on this subject is stated in 40 Am. Jur., 724, where it is said:

"where a contract is made in a particuar state, either with a person then a resident of that state who afterward removes therefrom, or with a nonresident of that state, it is the duty of the promisee to provide a place in the state where payments can be made, and it not necessary for the debtor to go beyond the bounds of the state to make payments thereon."

In accordance with this rule and for the purpose of the statute of limitations these causes of action arose in Illinois, and, therefore, §11,234 GC, and not §11,228, governs, as a shorter period is provided by the laws of Illinois, the law of that state applies, and under that law all these actions were barred at the time this action was filed with the possible exception of the fifth.

It will be observed that as to all the causes of action set forth in the defendants' third amended answer and cross-petition, excepting the second one, the statutory period of five years had not run when the plaintiff's note became due and his cause of action accrued. They therefore had a concurrent existence as matured claims enforced in independent actions. The second was barred at that time. All except possibly the fifth had accrued more than five years before the plaintiff filed this action and of course more than five years before the filing of the answer and cross-petition in which they were asserted. And the statute would, without doubt, bar affirmative relief upon all of them except possibly the fifth based on undiscovered fraud.

This situation presents the question of to what extent these barred causes of action are available as a defense.

By §11,321 GC, it is provided that:

"When cross-demands have existed between persons un-

der such circumstances that if one had brought an action against the other a counterclaim or set-off could have been set up, neither can be deprived of the benefit thereof by assigment by the other, or by his death. The two demands must be deemed compensated so far as they equal each other."

It will be seen on first reading of the last sentence of this section that if the cross-demands—no matter what their character—were to be deemed compensated the impact of that section would be so annihilating that time could not add to the oblivion of the one or re-animate the other. Still we find the Ohio cases on the availability of the statute of limitations as a defense to a set-off or counterclaim in some confusion, and this only reflects the confusion in other jurisdictions.

Notwithstanding the broad sweep of statutory enactments making the rule of compensation applicable to all instances of mutual set-offs and counterclaims, there is discovered a tendency in many jurisdictions to limit its application to set-offs and counterclaims relating to the same subject-matter, which, in effect, limits it to recoupment which is available as a defense in the absence of a statute.

In **36 O Jur., 587**, it is said:

"The purpose of the Statute of Limitations is to bar actions, rather than to deny or suppress matters of defense. But there is a well-settled exception to this rule where a defense is a matter of set-off or counterclaim. A debt cannot be allowed as a set-off or form the basis of a counterclaim, over the objection of the plaintiff where the debt is barred by the Statute of Limitations prior to the commencement of the action in which it is asserted, the general rule being that if the defendant answers with such a defense the plaintiff may, in his reply, plead the statute; or, if the facts constituting the bar of the statute appear on the face of the pleadings, the defense of the Statute of Limitations against a set-off may be raised by demurrer, but if not raised by one or the other, the defense is waived."

Substantially the same statement is found in **25 O Jur., 573, et seq.**

Two Supreme Court decisions are cited in support of the text. One is **McEwing v. James, 36 Oh St., 152,** in which the court rendered judgment for the defendant for the excess of his claim over that of the plaintiff's claim. The syllabus on this matter is limited to the statement that the statute of

limitations ceases to run "against a set-off from the date of the commencement of the action in which it is pleaded" which, of course it does and no judgment could have been rendered on the set-off in favor of the defendant if the statutory period had run when the action was filed. The court in its opinion called attention to the fact that "The testimony is not set out, and for aught that appears in the record the testimony may have shown—matter avoiding the statute of limitations." Of course, if the statute had run against the defendants' claim at the time plaintiff filed his action the bar of the statute would have prevented a judgment for the excess. What the court said must be interpreted in relation to the issue before it. So construed it cannot be said to be an authority for the text in Ohio Jurisprudence. Indeed, the court closes its opinion with the statement: "This view of the case renders it unnecessary to determine whether section 99 of the Code of Civil Procedure of 1853 in relation to the compensation of counterclaims, does or does not apply in cases like the present."

The other case relied on to support that text is **Bryant v Swetland, 48 Oh St., 194.** The plaintiff sued upon a written contract. The defendant by answer alleged that the writing through mutual mistake failed to express the actual agreement and prayed that the written agreement be reformed. More than ten years had passed from the making of the agreement to the filing of the plaintiff's action thereon. The plaintiff in his reply pleaded the statute of limitations to the defendants' answer praying for a reformation. The court held that the statute barred the defendant's right to a reformation and awarded judgment for the plaintiff in accordance with the writing which the defendant asserted did not express the real agreement without giving the defendant an opportunity to prove his assertion even by clear and convincing evidence as he would have been required to do had he been given the opportunity. To the writer of this opinion that decision seems entirely unjust and out of harmony with the spirit and purpose of the Code of Civil Procedure. Surely that was a defect that inhered in the plaintiff's cause of action that should be available to the defendant whenever the plaintiff instituted an action on the writing. Under the old dual systems it is true the defendant would have been required to file a suit in equity seeking injunction and reformation, but surely under our code that abolishes the distinction between law and equity in procedural matters and provides for one action in which a defendant may plead as many defenses as he has whether

heretofore denominated legal or equitable or both a defendant should be permitted to use his equity as a shield whenever attacked rather than be required to initiate an action at the risk of having his right barred if he does not do so, notwithstanding all he wants is protection against the plaintiff's false claims.

We have already set forth our views of Bryant v Swetland in Eagle Savings & Loan Co. v Hucke, et al., decision by this Court September 28, 1942, and will not restate them here.

It is noteworthy that neither in the briefs nor the opinion of the court was §11,321, GC, mentioned.

But regardless of the soundness of what we have just said, we have concluded that the court did not in that case decide where no affirmative relief was needed by the defendant to make his defense available that lapse of time would prevent a set-off or counterclaim from being so used. The Court did not refer to that section.

In view of the clear language of §11,321, GC, we are of the opinion that the Supreme Court has not decided in these cases that a set-off or counterclaim was unavailable as a defense where no affirmative relief was sought or required to effect a compensation of the cross-demands. We are emboldened to so hold by the recent decision of the Supreme Court in the case of In Re Estate of Butler, 137 Oh St., 96, the fifth paragraph of the syllabus of which is:

"Defenses are not barred by the statute of limitations, and cross-demands must be deemed compensated as soon as they mature insofar as they are equal to each other."

And at page 108, the Court said:

"It is a general rule that defenses are not barred by the statute of limitations and that cross-demands must be deemed compensated as soon as they mature insofar as they are equal to each other. See §11321 GC; 25 O Jur, 573, Sec. 230; Hart v Church, 126 Cal., 471, 58 p., 910; First Natl. Bank of Chicago v Rogers, Brown & Co., 299 F., 602; Warner v Sullivan, 249 Mich., 469, 229 N. W., 484; 16 A. L. R., 339."

It is true that the facts would indicate that in that case the same result might have ensued under the doctrine of recoupment, but the court both in the syllabus and the opinion bases its decisions upon the operation of §11,321 GC and stated broadly that matured cross-demands must be deemed compensated.

(3)   The statute (§11,321) by its express terms is limited in its application to such cross-demands as could have been pleaded as set-offs or counter-claims had the action been filed on either of the cross-demands. Appellee calls attention to the fact that his note is the joint obligation of both defendants, while all of the claims set forth in the cross-petition arose in favor of the defendant Morris Krauss alone and a one-half interest was not assigned by him to Dora Krauss until October 8th, 1937. The appellee claims that these claims could not have been pleaded as set-offs and therefore the statute providing for the automatic compensation of cross-demands has no application.

The defendants in their third amended cross-petition alleged that there had been an oral assignment at the time the defendants signed the note sued on by the plaintiff and that the later written assignment was evidence of the prior oral assignment, but the writing does not disclose any such purpose and there is no evidence aliunde to support the allegation. We must, therefore, treat this issue on the fact basis that until October 18th, 1937, the choses in action alleged in the cross-petition were the property of Morris Krauss alone and that Dora Krauss had no title therein of any sort. It is therefore vital to the defendants, right to determine the effect of these facts upon the application of §11,321 GC, because if the claims were not available as set-offs they cannot be deemed to have compensated the plaintiff's note pro tanto.

In 36 O Jur., 562, it is said:

"The general rule, both at law and in equity, is that separate debts cannot be set off against joint debts unless there is some special equity or equities to justify it."

That this is the prevailing rule in most jurisdictions is shown by the text in 24 R. C. L., 866, et seq.:—

"It is established in most of the states that in a suit against two or more persons on a joint obligation, set-off is not available to less than the entire number of defendants. The reason of this rule is plain. A joint obligation is indivisible. Each one of the obligors is bound to the same extent and in the same manner as all the others. A separate judgment against less than the entire number would be impossible; and in this very fact of indivisibility lies the security to the obligee of accepting a joint obligation."

Now what effect did the subsequent assignment of one-half of the chose have upon the application of this rule? In Plante v Shortell & Son, (——N. H.——, 24 A. (2d.) 498), 139 A. L. R., 1325, the Court held as stated in the syllabus that:

"The purchaser of a right of participation in a note may not set off the interest so acquired against a debt owed to the maker."

And in the annotation it is said:

"It has been held in effect that the holder of a fractional interest in a claim cannot set off the same against a demand which his debtor has against him."

Clearly then, the existence of the several obligations set forth in the third and fourth causes of action in the cross-petition would not have been available as set-offs against the joint obligation of the defendants and therefore the concurrent existence of the claims did not effect a compensation of the plaintiff's note pro tanto, and, therefore, the statute of limitations is a bar to their assertion now. The subsequent assignment of a one-half interest clearly could not be given a retroative operation which would be necessary to effect a compensation under §11,321 GC.

As to the fifth cause, other considerations are presented. It is urged that that cause was not barred because a trust relationship existed and also because it arose out of fraud that was not discovered until after this action was filed. If this cause of action was not barred by the running of the statute of limitations an interesting question of whether in view of the fact that it was originally the several claim of one defendant it could be pleaded as a set-off against the defendants' joint obligation, and whether the assignment of a one-half interest to the co-defendant after the action was filed would make it available if it would not otherwise be. It is not free from doubt. Plante v Shortell, supra, 24 R. C. L. 866. There are strong reasons, based on equitable considerations, for allowing the set-off under such circumstances. However, we are not called upon to answer this question.

The fifth cause of action was based upon the defendant Morris Krauss' claim that in 1924 he and the plaintiff entered into an agreement to invest $5,000.00 each in The Big 3 Radio Corporation of New York City, and that he gave the plaintiff $5,000.00, as his agent or trustee for that purpose, that each

160

was to receive one-third of the corporate stock and the other one-third was to go to two others in consideration of a stock of radios and radio parts, that the plaintiff only invested $3750.00 on behalf of the defendant, and that after the business was conducted for about two years, it was discontinued and the plaintiff received merchandise worth about $4,000.-00 of the assets of the corporation for the joint account of himself and the defendant, but never accounted to the defendant for any part of it and fraudulently concealed from the defendant the fact that he had received the merchandise, and the fact was not discovered until after this action was filed.

In proof of these allegations the defendant offered evidence that at the formation of the corporation the plaintiff gave it his check for $7500.00 and argues from that that there was a failure to invest the entire $5000.000 which the defendant gave him for that purpose. But there is no evidence to disprove that the plaintiff did not invest the $5,000.00 on behalf of the defendant and only $2,500.00 on his own behalf. It does appear that the defendant received one-third of the corporate stock.

It is true that if the plaintiff agreed to invest $5000.000 and only invested $2,500.00, it would be a violation of his agreement, but that is not the allegation of the defendant and there is no proof of damage resulting from the failure of the plaintiff to invest $5,000.000 on his own behalf.

As to what happened in discontinuance of the business it appears that some radio parts were shipped to The Triangle Electric Company in which the plaintiff was interested and probably the controlling spirit. But these radio parts were shipped by and under the authority of the corporate officers of The Big 3 Radio Corporation, and while some witnesses inferred and implied that they were shipped to The Triangle Electric Company for the use of Cohn and Krauss, there is no evidence to that effect. In the conduct of the business of Big Three Radio Corporation sales had been made to The Triangle Electric Company and the goods paid for and this last shipment is more logically a continuation of that relation than otherwise. At any rate there is no substantial evidence that the plaintiff received the property for the account of the defendant or that the plaintiff converted the property of the defendant to his own use.

For these reasons, the judgment is affirmed.

ROSS, P. J., & HILDEBRANT, J., concur.