Middleton, J.
The appellant makes three claims of error: The first is that the Court of Appeals was Avithout authority to render final judgment against the plaintiffs below — particularly against Bridget McGovern. The second and third are basically the same. They challenge the decision of the Court of Appeals that the outlawed note can be set off against the distributive share of the heir, Bridget McGovern. That is the real question at issue. The McGovern note was executed on June 6, 1930. The payee, Patrick Connolly, died August 22, 1948. It is conceded that the 15-year statute of limitations had run against the note *401 before his death. What is the effect of the running of the statute? That question is not easily answered.
The first statutes limiting the time for bringing personal actions, as distinguished from actions involving real estate, were enacted during the reign of James I of England. Laws of such general character, but in a variety of forms, have been enacted in all the states of the United States. The courts of England and of America have decided many cases construing those statutes and defining rights of litigants thereunder but surprisingly little harmony of decision has resulted. In 53 Corpus Juris Secundum, 900, is the following pertinent statement based on an early decision of a Maryland court:
“It has been remarked that on almost every question connected with the statute of limitations there has been a most embarrassing conflict of judicial opinion.”
A fair approximation of accord has been reached among our courts that basically such statutes are statutes of repose and not of presumption. The original English theory of presumption of payment or discharge of a debt long overdue is no longer generally relied upon to justify such statutes. As statutes of repose, they are considered as designed to secure the peace of society and to protect the individual from being prosecuted upon stale claims. Townsend v. Eichelberger, 51 Ohio St., 213, 216, 38 N. E., 207. It is said that sound public policy justifies a limitation for commencement of actions because of “the difficulty of preserving evidence, the frailty of the memory, and the contingency of the death, of witnesses.” See Doyle v. West, 60 Ohio St., 438, 444, 54 N. E., 469; 53 Corpus Juris Secundum, 902, Section 1.
The practical effect of the theory of “repose” is that the debtor has the option to assert the statute and defeat recovery (except in states where by statute the debt itself is extinguished by the running of the *402 statute), but if the debtor chooses to assert the statute of limitations as a defense the result is the same as though the presumption of payment and discharge were indulged.
In some states statutes of limitation specifically provide that the right of recovery as well as the right to bring the action is extinguished by the running of the statute. The statutes of Ohio do not so provide but it has long been the law of Ohio that the debtor may defeat recovery by asserting the running of the statute of limitations. This right of the debtor to defeat recovery by pleading the statute of limitations must be kept in mind when the courts assert, as is said in Taylor v. Thorn, Admr., 29 Ohio St., 569, 573: “They do not extinguish the debt nor affect its validity. They merely withhold from the owner thereof the right to employ remedial process for its collection.”
When considering the effect of the running of the statutes of limitation, an important principle is frequently involved, which is usually stated as “the running of the statute of limitations does not bar defenses.” This cryptic statement of law must be analyzed and understood to avoid erroneous application of it. Such analysis and understanding are particularly important in the instant case Avhere a note against which the statute of limitations had run is pleaded as a “setoff.” Is such setoff a “defense” and, therefore, not barred by the running of the statute?
In 17 Ruling Case Law, 745, Section 112, we find the folloAving:
“The general rule is that statutes of limitation are not applicable to defenses. * * * It should be noted, however, that the rule under consideration applies only in the case of strict defenses, and has no application to and does not govern cases of setoff or counterclaim.” (Emphasis supplied.)
Then follows, in Section 113, ibid.:
*403 “A counterclaim of a defendant is regarded as an affirmative action, and therefore, unlike a matter of pure defense, is subject to the operation of the statute of limitations. The statute applies as well to a sum attempted to he set off as to one on which an action is to he brought.” (Emphasis supplied.)
A discussion of this rule as of a more recent date appears in 34 American Jurisprudence, 57, Section 63, as follows:
“The purpose of statutes of limitation is to bar actions and not to suppress or deny matters of defense, whether legal or equitable; and it is a general rule that such statutes are not applicable to defenses, biit only where affirmative relief is sought. Thus, so long as the courts will hear the plaintiff’s case, time will not bar the defense which might be urged thereto, and which grew out of the transaction connected with the plaintiff’s claim * * *. It frequently has been applied in actions on notes, in actions for the possession of property, and in cases where the statute of limitations was pleaded to the defense of fraud. It should be noted, however, that the rule under consideration applies only in the case of strict defenses, and, in the absence of statute, does not apply to cases of setoff or counterclaim.” (Emphasis supplied.)
And, at page 59, Section 65, ibid., it is stated:
“Inasmuch as the purpose of statutes of limitation to compel claimants to seek enforcement of their claims promptly would be frustrated if the possessor of a disputed claim may remain inactive for the statutory period or even longer and then attempt to enforce his demand in whole or part, it is the established rule, which has been applied in a great variety of cases, including, actions on bills and notes and for breach of warranty, that in the absence of express statute, a demand of a defendant, whether pleaded by way of setoff, counterclaim, or cross-bill, is regarded as an *404 affirmative action, and therefore, unlike a matter of pure defense, is subject to the operation of the statute of limitations, and is unavailable if barred. In other words, the statute applies as well to a sum attempted to be set off as to one on which an action is to be brought.” (Emphasis supplied.)
53 Corpus Juris Secundum, 1090, Section 106, states the rule as follows:
“Accordingly, as a general rule, in the absence of a statute to the contrary, the statute of limitations may be pleaded to a setoff, and, likewise, the statute of limitations may be pleaded to a counterclaim, cross-action or cross-bill, or plea in reconvention.
“The general rule does not apply, however, if a plea denominated by defendant as a setoff, or denominated as a counterclaim * * * does not have the nature and characteristics of an independent suit or action, but is essentially a defensive plea, unless defensive matters are by statute subject to limitations.”
In the instant case the Court of Appeals appears to have adopted the argument of the administrator and to have considered it necessary to overrule the demurrer of the plaintiff to the setoff on the authority of In re Estate of Butler, 137 Ohio St., 96, 28 N. E. (2d), 186, and two sections of the General Code of Ohio hereinafter discussed.
The portion of the Butler case so relied upon is the first clause of the fifth paragraph of the syllabus which reads: “Defenses are not barred by the statute of limitations, * * The decision in the Butler case was not predicated upon a factual situation similar to that here involved. In that case there were offsetting items in a running account for a period of over ten years. The Court of Appeals found that cross-demands had existed which would have prevented the running of the statute. This court merely affirmed the holding of the Court of Appeals without discus *405 sion. The statement contained in the fifth paragraph of the syllabus as above quoted is sound but the true meaning of the word, “defenses,” must be kept clearly in mind. The general law is well established that everything which may be included in an answer is not a “defense,” as that term is used in connection with the effect of the running of the statute of limitations. If the matters pleaded in defense grow out of or are connected with the matters pleaded in the petition, so that the establishment of the facts so pleaded in defense would defeat recovery, as, for example, would be the ease where fraud or misrepresentation were pleaded, a “true” or “pure” defense would be alleged and such defense would not be barred by the running of the statute. If, however, the facts pleaded in the answer call for affirmative action, such as is required with respect to setoffs or counterclaims, the statute does operate to prevent such facts being pleaded. A setoff such as is pleaded in the instant case by the administrator has the characteristics of a cross-petition which requires what amounts to a counterjudgment. In other words, the pleading of the setoff calls' for affirmative action of the court. The facts pleaded as a setoff do not arise out of any transaction pleaded in the petition. When these principles are kept in mind it clearly appears that the fifth paragraph of the syllabus of the Butter case is entirely consistent with the authorities hereinabove set forth, but the statement so contained in the Butter case does not govern the instant case.
The authorities cited in the opinion in the Butter case in connection with the statement which was carried into the syllabus are entirely consistent with the above discussion of the rule and especially is this true of 25 Ohio Jurisprudence, 573, Section 230, which was cited and which reads:
*406 “The principle of law that defenses are held not to be barred by the statute of limitations is well established by the authorities, and is founded on reason. Manifestly, the purpose of the statute of limitations is, as has been well said, to bar actions, and not to suppress or deny matters of defense, whether equitable or legal. The well settled exception to this rule is that where a defense is a matter of setoff or counterclaim, the statute of limitations as to any affirmative relief may be invoiced by the plaintiff in reply.” (Emphasis supplied.)
In accord with these statements is the second paragraph of the syllabus in the case of Kocsorak v. Cleveland Trust Co., 151 Ohio St., 212, 85 N. E. (2d), 96, which reads:
“Where an obligation is not enforceable in an action at law, it cannot be set off against an opposing claim. ’ ’
Thus it clearly appears that in litigation not involving the rights of an heir or legatee, a note against which the statute of limitations has run is not a “defense” which can be pleaded and enforced as a setoff, if the maker chooses to rely upon the statute of limitations. Is the rule different if the note against which the statute of limitations has run was executed by an heir or legatee of a decedent?
In the instant case the statute had run on the note of McGovern. The payee of that note could not have brought an action to collect on the note, but, when the maker of the note brings an action against the administrator of the estate of the payee to compel distribution to her of a share of the estate of the payee, can the administrator claim the obligation of the outlawed note as a setoff?
Many years ago the English courts set a precedent by answering this question, “yes.” Some American courts follow the English precedents on the theory that the debt is not extinguished but remains as a *407 moral obligation and that it would be unjust and inequitable to permit the heir or legatee to take a full share of the estate without discharging that moral obligation. The states whose courts are generally cited as following the lead of the English decisions are Florida, Georgia, Illinois, Minnesota, New Jersey and Washington. At present, more courts hold to the contrary and do not permit such outlawed debts to be used as setoffs. Among the states whose courts so hold are California, Kentucky, Massachusetts, Maine, Mississippi, Nebraska, New York, Pennsylvania, Tennessee and Wisconsin. Ohio is usually included in this group by reason of the decisions of the Circuit Courts and Courts of Appeals, particularly the decision in the case of Harrod v. Carder’s Admr., 3 C. C., 479, which was decided in 1888 by the Circuit Court of the Second Circuit. (Annotations may be found in the following volumes of A. L. R.: 1, page 1007; 16, page 341; 30, page 778; 73, page 582; 75, page 880; 110, page 1385; and 164, page 726.) Upon review of the decisions it will be observed that Nebraska and New York are listed in early digests as following the English rule but the courts of both states have in recent years abandoned their former position and are now following the lead of the courts of Maine, Massachusetts and Pennsylvania. See Hiatt v. Hiatt (1945), 146 Neb., 652, 20 N. W. (2d), 921; Kimball v. Scribner (App. Div. 1916), 161 N. Y. Supp., 511; In re Sullivan, 33 N. Y. Supp. (2d), 263 (Sup. Ct. Special Term, 1942, affirmed, 39 N. Y. Supp. [2d], 3, by Appellate Division).
One of the early decisions which adopted the reasoning followed and generally applied ,in Ohio is Allen, Exr., v. Edwards (1883), 136 Mass., 138. In that case the executor of the will of one Saunders undertook to deduct from a legacy a debt alleged to be due from the legatee to the testator. The debt was evidenced by *408 promissory notes upon which no effort had been made by the testator to collect and against which the statute of limitations had run. No mention of the debt or of the notes' was made in the will. Under these circumstances the court said:
“We are left therefore to determine the inquiry by considering what is the proper construction of the statutes under which the Probate Court acted in refusing to direct this reduction, and ordering the legacy to be paid in full.”
The court then quoted the applicable statute which, it will be observed, was strikingly similar to Section 10509-186 of the General Code of Ohio. The Massachusetts statute read:
“A debt due to the estate of a deceased person from a legatee shall be set off against and deducted from the claim of such legatee, and the Probate Court shall hear and determined as to the validity and amount of any such debt, and may make all decrees and orders necessary or proper to carry-into effect such setoff or deduction.”
There, it was contended by the administrator that the only possible reason for the enactment of such a law was to allow the estate of the testator the benefit of any claim justly due from the legatee, but for which no right of action existed. This argument was rejected by the Supreme Judicial Court. The court said in part:
“The language of the. statute does not favor the contention of the appellant. The debt due is to be ‘set off against and deducted’ from the claim of the legatee. The phrase ‘set off’ is technical, and is ordinarily to be applied to claims which could be used in setoff in an action of contract. The Probate Court is also to determine the ‘validity’ of the debt. It would not be within the ordinary meaning of legal language *409 to say that a debt was valid, which was without the strength, force, and effect which would make it good in law, or enable its holder there to enforce it by proper proceedings.”
The Massachusetts court then discussed as follows the basis for the rule applied in England:
“It is further urged, that, as the English Court of Chancery has held, on general principles of equity, that an executor has a right to retain from a legacy a debt due to the testator from a legatee, even though the debt is barred by the statute of limitations, it must have been intended by the Legislature, in enacting the statute we are considering, that the Probate Court, acting on the general principles of equity, would allow the same right of retaining from a legacy the amount of debts barred by the statute of limitations. Apparently the law is held in England as contended by the appellant. Courtenay v. Williams, 3 Hare, 539, 15 L. J. (N. S.), Ch. 204. Coates v. Coates, 33 Beav., 249. In re Cordwell's Estate, L. R. 20 Eq., 644. There is but slight force in the argument, when we observe the difference which exists under our law in regard to legacies. In England, no action at law can be maintained for a legacy, and the courts of equity have always assumed the right to impose the terms on which the beneficiary shall receive it. Lord Kenyon, in refusing to entertain an action at law for a legacy, says: ‘If an action will lie for a legacy, no terms can be imposed on the party who is entitled to recover; and therefore when the legacy is given to a wife, the husband would recover at law, and no provision could be made for the wife or family; whereas a court of equity will take care to make some provision for the wife in such a case. But the whole of this admirable system, which has been founded in a court of equity, will fall to the ground, if a court of law can enforce *410 the payment of a legacy.’ In the same case, Mr. Justice Ashhurst adds: ‘In a court of law we cannot impose any terms on the party suing; if he be entitled to a verdict, the law must take its course; but a court of equity will impose on the party applying such terms as they think right and according to conscience.’ Deeks v. Strutt, 5 T. R. 690.”
Another early and interesting decision was rendered by the Supreme Court of Maine in 1888 in the case of Holt v. Libby, 80 Me., 329, 14 A., 201. In that case a legatee was indebted to the testator upon a promissory note against which the statute of limitations had run. The question was whether the amount of the legatee’s debt could be deducted from the legacy. In holding that the debt against which the statute of limitations had run could not be deducted, the court said in part:
“It is a general rule, in the settlement of legacies by an executor, that he may retain the legacy, the whole or a sufficient portion, in satisfaction of the legatee’s debt to the estate, if the testator does not indicate, either in the terms of the bequest or in other parts of the will, that it shall be otherwise. This is the rule both in law and equity.
“The English practice goes further, and allows the rule to prevail, on the idea of lien, as to debts which have become barred by the statute of limitations. The leading case maintaining the English rule seems to be Courtney v. Williams, 3 Hare, 539. Subsequent English cases follow in the same line. Rose v. Scales, 15 Beav., 189; Coates v. Coates, 33 Beav., 249; 1 Redf. Wills, 489, and cases cited in note. One or two of the American state courts may have practiced on the English rule.
“But a legacy was recoverable in England, in the day of the authorities cited, only in chancery. The *411 same rule of equitable setoff prevails in that country not only as to legacies, but also as to the share of one entitled as next of kin in the estate of an intestate. In re Cordwell’s Estate, L. R. 20 Eq. 644. The reason assigned in the latter case for the rule is, that ‘until the debtor discharges his duty to the estate by paying the debt he owes to it, he can have no right or title of it under the statute.’
“This doctrine cannot be applicable in this state, and in most of the states, where a legacy is made by statute, if not by ancient practice, a legal claim. With us it is a distinct and independent legal claim. The estate is just as much of a debtor to the indebted legatee as the legatee is to the estate. Each has a legal right and remedy. And a statute-barred debt is no more recoverable by an estate than by any other creditor. To our minds, this is the better doctrine. Observati.on leads us to believe that a testator is more likely to intend to remit than to collect such debts, when nothing is declared of them by him in his will, especially debts against his children and relatives. In many instances such claims are covered by the dust of time and forgotten, though found by executors after the death of the testators. In many other instances the advances are intended as benefactions and gifts, conditioned upon some unforeseen circumstances arising to make it expedient to regard them as debts. ’ ’
In a more recent case, that of Luscher v. Security Trust Co. (1918), 178 Ky., 593, 199 S. W., 613, L. R. A. 1918C, 615, the Court of Appeals of Kentucky had before it a case where effort was made to deduct the amount of a note from an heir’s share of the estate, the statute having run against the note. The court, holding that the debt could not be deducted, said in part:
“Having no statute in this state making any ex *412 ception referable to claims asserted by an estate against a distributee, we are disposed to the view that the general statute of limitations is as applicable in this class of cases as it is in others. It may be true, as urged by counsel for the estate, that to allow George Stahel to get his full distributive share of the estate, while denying the estate the right to deduct his indebtedness, would be unjust to the other heirs and distributees; but if so the injustice was not worked by the law, but by the failure of Mrs. Stahel to collect or attempt to collect her debt before it was barred by the statute, or to put it, as we may assume she might easily have done, in such form as that its life would have been extended.”
In the case of Harrod v. Carder’s Admr., 3 C. C., 479, above referred to, which'was decided by a Circuit Court of Ohio in 1888, the court adopted reasoning quite similar to that set forth in- the cases above discussed and relied heavily upon early decisions of the courts of Pennsylvania. The question in the Earrod case, as stated by the court, was:
“The only question presented by the record is whether a debt due to an intestate from his legal representative may be retained out of, or set off against, the distributive share of the latter, where such debt was barred by the statute of limitations in the lifetime of the decedent.”
In discussing the early English authorities, the court said that they “seem to be based upon the idea that equity requires that one who would take the bounty of his ancestor ought in good conscience to pay what he morally owes his estate.”
The court then made the following significant statement: “But the weight of authority in the United States is opposed to this, and more on consonance, we think, with justice.”
*413 Then, after discussing the well accepted conception that the statute of limitations is one of repose and not of presumption, the court said:
“Public policy requires that debtors shall not be vexed concerning demands which have become stale; and that creditors who delay collection beyond the statutory period shall lose their remedy. Nor is there any reason apparent why the rule inter vivos should not apply against the estate of a deceased person.
“We hold, therefore, that the right of action upon the notes set out in the answer having been barred in the lifetime of defendant in error’s intestate, such notes are not available by way of setoff, the plea of which is in the nature of a cross-action.”
That decision of a Circuit Court of Ohio rendered some 65 years ago has never been overruled or modified by any decision of this court. On the other hand, it has been considered as stating the law of Ohio on the subject, and many other decisions of the Circuit Courts and Courts of Appeals of this state have recognized that decision as the law of Ohio. See Nasby Building Co. v. Walbridge Building Co., 6 Ohio App., 104; Eagle Savings & Loan Assn. v. West, 71 Ohio App., 485, 50 N. E. (2d), 352; Cohn v. Krauss, 45 Ohio Law Abs., 148, 67 N. E. (2d), 62. Upon study of Shriner v. Price, Exr., 74 Ohio App., 373, 59 N. E. (2d), 152, cited and relied upon by the appellees, it will be observed that the exact question now at issue was not there involved, and that the statements relied upon are in fact obiter.
The reasoning of the courts of Maine and Massachusetts in the early decisions above discussed, of the Court of Appeals of Kentucky and of the Circuit Court of Ohio in the early case of Harrod v. Carder’s Admr., supra, impresses this court as sound and preferable to the theories under which some courts *414 make an exception to the general law when faced with the problem of enforcing an outlawed debt of an heir or legatee by requiring such debt to be deducted from the inheritance or legacy.
It is urged in some eases and announced by some courts that it is inequitable and unfair to permit one heir to receive more than the other heirs by relieving such heir of payment of an outlawed debt due the decedent and, likewise, unfair and inequitable to permit a legatee to receive the full amount of a legacy without payment of an outlawed debt. We agree with those courts which refuse to indulge in such solicitude for the heirs or legatees when the decedent felt no such concern and took no steps either to collect the debt or to direct by will that it be deducted from a bequest. It is certainly logical to assume, as is done by many courts, that the decedent, whether he died testate or intestate, evidenced an intent not to enforce the debt when he failed for many years to make any effort to collect it or to provide in his will for its deduction from a legacy. When moré than 15 years have elapsed and the decedent is no longer present to be consulted, the presumption may well be indulged that the debt was paid or specifically forgiven. In any event, it does not seem incumbent upon this court to do now what the decedent purposely or carelessly failed to do. We see no reason for applying the statute of limitations against an heir or legatee in a different manner from that in which it would be applied with respect to other debtors.
If a decedent at death held two notes, each for $5,000 and each 20 years past due; one note having been executed by a son, daughter or other close relative of decedent and the other by a stranger to the family, why should those notes be affected differently by the statute of limitations Í Unquestionably the note *415 of the stranger conld not be collected and the estate would derive no benefit from it. But upon the principles urged by the appellee herein — and adopted by the courts which follow the English decisions — the note of the member of decedent’s family could be collected, by way of deduction from inheritance. JThis inconsistent result would be reached notwithstanding that by every test of logic or experience the decedent would have been more likely to have forgiven the old debt of the member of his family than to have forgiven the debt of the stranger. It is most difficult to justify such result. Unless, therefore, the statutes of Ohio contain a mandate requiring that this outlawed note be recognized as a valid setoff and be deducted from the plaintiff’s share in the estate, we must agree with the trial court which sustained the demurrer to the setoff.
Two statutes are further to be considered. The one is Section 11321, General Code, which reads:
“When cross-demands have existed between persons under such circumstances that if one had brought an action against the other a counterclaim could have been set up, neither can be deprived of the benefit thereof by assignment by the other, or by his death. The two demands must be deemed compensated so far as they equal each other.”
Patrick Connolly was never indebted to McGovern. Her claim was against his estate and came into existence only at his death. At the time of his death the note was unenforceable. The statute had run against it more than three years previously. No valid cross-demands had existed as contemplated by Section 11321.
The other statute is Section 10509-186, General Code, which reads:
“When a beneficiary of an estate is indebted to such estate, the amount of the indebtedness if due, or the *416 present worth of the indebtedness, if not due may be set off by the executor or administrator against any testate or intestate share of the estate to which such beneficiary is entitled.”
This statute has an historical background. In the settling of many estates it has been urged that a bequest in a will in favor of a debtor of the testator evidenced an intent to forgive the debt and that consequently the debt could not be set off against the bequest. Likewise, the right of an administrator to collect a debt from an heir of an intestate decedent has been questioned. To clarify that situation, as we have shown above, the Legislature of Massachusetts passed an act somewhat similar to the Ohio statute prior to 1883. In the case of Allen v. Edwards, supra, the Massachusetts court construed that statute and held that the statute did not authorize offsetting of outlawed debts against an inheritance. We are constrained to hold likewise.
In construing Section 10509-186, General Code, the statute of limitations must be taken into account. It would not be logical to determine the law of Ohio to be that an outlawed note which is not a true ‘ ‘ defense ’ ’ cannot be pleaded as a setoff and then construe this section of the statutes as authorizing that very thing to be done. We, therefore, construe Section 10509-186 as authorizing the setoff or counterclaim only of debts which are valid — in the sense that they could be collected by court action. In view of this conclusion the administrator is not authorized by Section 10509-186 to deduct the indebtedness of the plaintiff from his share of the decedent’s estate. This statute serves a useful purpose in that it settles questions long disputed and it simplifies administration of estates but it does not authorize the action here undertaken by the administrator.
*417 After considering all the questions raised, we hold with the trial court in sustaining the demurrer.
In view of the conclusion reached by us that the Court of Appeals erred in holding that the demurrer should have been overruled, it is not necessary to rule upon the first assignment of error, which is that the Court of Appeals was without' authority to render final judgment against Bridget McGovern. However, since the question was raised and briefed we will state our conclusion that the Court of Appeals was without authority to render final judgment. Upon reversal of the judgment of the Probate Court, the cause should have been remanded to the trial court so that McGovern could exercise the right accorded in Section 11362, General. Code, and, with consent of the trial court, file an answer to the setoff. Even if the Court of Appeals was right in holding that the demurrer should have been overruled and in holding the alleged setoff available, notwithstanding the statute of limitations, McGovern may have been able to plead facts which, if established, would nullify the setoff.
The judgment of the Court of Appeals is reversed and that of the Probate Court affirmed.

Judgment reversed.

Weygandt, C. J., Matthias, Zimmerman and Stewart, JJ., concur.
Taet and Hart, JJ., dissent.